**Commonwealth v. Bodine**

*J. Joseph McCluskey,* for Commonwealth.
*James R. Marsh,* for defendant.

WILLIAMS, P. J., December 9, 1970.—The marriage of prosecutrix and defendant terminated in divorce on February 14, 1969. Two children were born of the marriage, William Robert, born on December 6, 1951, and David, born on August 14, 1954.

The court, on December 30, 1968, entered an order directing defendant to pay $75 per week for the support of his wife and two children. After the divorce, the order was reduced to $50 per week for the support of the two children.

The son, William, was graduated from high school in the spring of 1968. He was accepted at Purdue University and planned to enter that university in September 1969.

Prior to his entering Purdue, defendant succeeded in securing his son's admission to the Air Force Academy and he entered the Academy June 23, 1969, and remained there about one and one-half months. He did not like it and when his brother was injured in an accident, on the basis of hardship he secured his release from the academy and returned home with the intention of going to work and assisting his mother. His mother urged him to renew his applica-

tion to enter Purdue, which he did, and he became a student there in September 1969. Had he remained in the academy, he would have had no need of financial aid but would have been obligated to serve six years in the Air Force following his graduation.

Defendant has requested that the order for the support of the son, William, be vacated. This request is resisted by the mother.

The father's position is twofold: (1) That his son left the Air Force Academy without his approval and that, as his father, he had the right to determine the college his son attends; (2) that it would place upon him an undue burden to require him to contribute to the cost of his son's college education.

We think the father's position in both instances must be rejected.

In Commonwealth ex rel. Smith v. Smith, 217 Pa. Superior Ct. 1 (1970), the father had an annual income of $6,620.64. He was ordered on February 21, 1969, to pay $40 per week for the support of his wife and one child, $15 per week for the support of his wife, and $25 per week for the support of his daughter. In addition, he was ordered to pay any necessary medical expenses of his daughter and the mortgage on the jointly-owned property in which the wife and daughter resided. The mortgage payment was then $50 monthly. His salary was then $116.72 per week. His wife was earning $35 per week. The husband petitioned the court to vacate the order as to the daughter, since she had graduated from high school. The wife petitioned the court to increase the order, since the daughter had entered Delaware College. At this time, the husband's salary had increased to $127.32 per week. The wife's salary had increased to $48 per week. The mortgage payments had increased to $65 per month. The court below refused to vacate the order as to the daughter and increased the payment

for the wife by $2.50 per week. Thus, the husband was required to pay $17.50 per week for the wife, $25 per week for the daughter and $65 per month on the mortgage.

On appeal, the husband asserted that: (1) He had not promised the daughter a college education, an issue not present in this case; (2) that his financial condition did not warrant an order for the payment of such college education; and (3) that it was an abuse of discretion for the court below to increase the support order for the wife.

The Superior Court rejected all three of the husband's contentions.

It appears in that case that the husband wished his daughter to attend Temple University and that he was hopeful of obtaining a scholarship for her at that university. She started at Temple and then transferred to Delaware, a situation not unlike that here presented. The Superior Court commented, page 5:

"We believe that the record clearly and substantially supports a finding that the father did promise his daughter a college education and that he in fact does want her to continue with the college education *but only in a school he has had a voice in choosing.*" (Italics supplied).

The court below had stated to the father:

" 'All right, I said to him for him to come up with a plan. This man impresses me because he has said every time, even with the income that he has, I want my children to go to college. Now, isn't that commendable? We are not going to decry the man for that. You come up with a good plan and the Court will listen to you. I guarantee you that.' "

Here, the father has not indicated any present willingness to aid his son to obtain a college education. He testified he had made no provision for his

children's education because of promises made by his parents to educate them. His father denied making any such promises. His only effort to help the son was to secure his admission to the Air Force Academy which would not place any financial burden upon him, and which the son, after entry, did not like.

The Superior Court in Commonwealth ex rel. Smith v. Smith, supra, did not excuse the father from aiding his daughter's education when she transferred from a college of his choosing to one of her own, and we see no reason to excuse defendant in this case because his son has chosen Purdue rather than the Air Force Academy as the institution for his college training.

In respect to defendant's contention that it would cause him undue hardship, the law is, as stated in Commonwealth ex rel. Ulmer v. Sommerville, 200 Pa. Superior Ct. 640 (1963), that while a father may not be required to endure "undue hardship" to send a child through college, his liability for such college education is not dependent on his being able to afford it without any personal sacrifices. The court said, page 644:

"Most parents who send a child to college sacrifice to do so. No mathematical rule can be formulated to determine how extensive the hardship upon a father must be before it will excuse him from supporting a child in college. It must be a matter of judgment in a field where judgments of sincere and advised men differ materially."

At the present time, the father has an annual income of $11,700. The mother earns $80 per week. Her mother resides with her and pays her $50 per month for her maintenance.

The costs of tuition, board and books at Purdue are $4,070. In addition, there are the incidental expenses such as clothes, transportation and personal needs.

The son has a scholarship of $800 per year. He earns $270 per year correcting papers and works during the summer vacation at a YMCA Camp where he earns $65 per week. He has borrowed $1,000 from the college. The mother has paid the balance of the college costs. The father, although ordered to pay $25 per week for the support of his son, has neglected to do so. On an order requiring him to pay $50 per week for the support of his two sons, he has been paying but $100 per month and has incurred a delinquency of $2,147 as of December 6, 1970. This has placed a heavy burden on the mother to keep her son in college.

The college year comprises 36 weeks. If required to pay $25 per week toward the son's support during the college year, the father's contribution would be $900 annually. He is ordered to pay $1,300 per year for the support of his other son. The total payments would be $2,200 per year, which would leave him $9,500 annually for personal uses.

In Commonwealth ex rel. Smith v. Smith, the court, in affirming the order of the court below, pointed out that after deducting the amount of support order imposed by the court defendant would have $4,000 left for his own use and benefit.

We see no undue hardship on defendant if he is required to pay $25 per week for the support of his son's college education. In fact, the order in the Smith case entailed a much greater personal sacrifice on the part of the father than that here imposed on defendant.

We have stated that defendant is in arrears $2,147. Against this amount, he is entitled to a credit of 14 weeks for the time between June and September 1969, when his son was either employed or at the Air Force Academy. He is also entitled to a credit of 14 weeks

during which the son worked between June and September 1970. His total credits aggregate 28 weeks at $25 per week or $700, leaving a delinquency of $1,-447, as of December 6, 1970.

Defendant complains that he has been deprived of the right of visitation of his two sons. We think the record is too meager on this question to make a determination of a definitive nature. We do think that visitation should be allowed and if denied, upon complaint of defendant, we will take testimony at an additional hearing and enter the order we deem appropriate.

We enter the following

## ORDER

And now, December 9, 1970,

1. The request of defendant to vacate the order of this court directing defendant to pay $25 per week for the support of his son, William, is denied;

2. Defendant is directed to pay the sum of $25 per week for the support of his son, William, for a period of 36 weeks per year toward the expense of a college education for his son, William;

3. Defendant is directed to pay the arrearages of $1,447 within 30 days of this order unless for cause shown the court extends the time for payment.